**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>v.<br><br>Anwar Armando Barragan-Flores,<br><br>        Defendant. | No. CR-16-00184-001-TUC-RM (LAB)<br><br>**ORDER** |

In the above-captioned case, Defendant Anwar Armando Barragan-Flores pled guilty to Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349, and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A. (Doc. 263.) On September 29, 2017, the Court sentenced Defendant to two consecutive terms of imprisonment—60 months for the former offense and 24 months for the latter offense—followed by a five-year term of supervised release only for the former offense. (*Id.*) Additionally, the Court ordered that Defendant and his co-defendants jointly and severally pay $196,613.16 in restitution to the victims identified in this case. (*Id.* at 2.) Now pending before the Court is Defendant's Amended Motion for Relief Under 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 270.) Defendant asks that the Court reduce his custodial sentence to time served and convert the remainder of his 84-month term to supervised release,[1] on the grounds that

---

[1] Defendant specifically asks that his custodial sentence be converted to supervised release "with home confinement [but] only if he were to remain in the United States (which he does not wish to do)." (Doc. 272 at 4; *see also* Doc. 270 at 20.) However, the Court is without authority to transfer Defendant to home confinement. *United States v. Carlucci*, 2020 WL 2527013, at *3 (D. Ariz. May 18, 2020), *aff'd*, 848 F. App'x 339 (9th Cir. 2021) ("While the CARES Act gives the BOP broad discretion to expand the use of

extraordinary and compelling reasons exist warranting this requested relief. (*Id*. at 2, 21; *see also* Doc. 272 at 4.) Namely, Defendant argues that his age and pre-existing medical conditions place him at a heightened risk of severe illness and/or death if he contracts COVID-19. (Doc. 270 at 5, 15–16.) The Government filed a Response in opposition to Defendant's Motion (Doc. 271), and Defendant filed a Reply (Doc. 272). For the following reasons, the Court will deny Defendant's Motion.

I.  **Legal Standard**

A court may reduce a term of imprisonment upon a defendant's motion, after considering the factors set forth in 18 U.S.C. § 3553(a), if: (1) the defendant has fully exhausted his administrative remedies, (2) "extraordinary and compelling reasons" warrant the reduction, and (3) the reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). A defendant exhausts his administrative remedies by appealing a failure of the Bureau of Prisons to bring a motion on his behalf or by the lapse of 30 days from the receipt of a request for compassionate release by the warden of the defendant's facility. *Id*.

The Ninth Circuit recently held that the current version of U.S.S.G. § 1B1.13 is not an applicable policy statement for purposes of 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam). The Ninth Circuit explained that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id*. Therefore, the Court will rely on U.S.S.G. § 1B1.13 as persuasive but non-binding authority for purposes of evaluating the present Motion.

Both 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13 direct courts to consider the sentencing factors set forth in 18 U.S.C. § 3553(a). U.S.S.G. § 1B1.13 further provides that a defendant's sentence may be reduced only if it is determined that the

---

home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision.").

defendant is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." The application notes to U.S.S.G. § 1B1.13 describe specific circumstances that present "extraordinary and compelling reasons" for a sentence reduction, including when a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1.

The factors to be considered in determining a sentence under 18 U.S.C. § 3553(a) include "the nature and circumstances of the offense and the history and characteristics of the defendant," the sentencing range established by the Sentencing Guidelines, the need to avoid unwarranted sentence disparities among similarly situated defendants, and the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

The factors to be considered in assessing dangerousness under 18 U.S.C. § 3142(g) include the nature and circumstances of the defendant's offense; the weight of the evidence against the defendant; the nature and seriousness of the danger to any person or the community posed by the defendant's release, and the defendant's history and characteristics, including "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse," and criminal history. 18 U.S.C. § 3142(g).

II. **Discussion**

On November 25, 2020, Defendant submitted a Compassionate Release/Reduction in Sentence request to the warden of the Giles W. Dalby Correctional Facility in Post,

Texas, where he is housed. (Docs. 267 at 1; Doc. 267-1 at 2–8.) On December 14, 2020, the warden denied Defendant's request. (Doc. 267-1 at 8.) The parties do not dispute that Defendant satisfied the exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A) prior to filing the instant Motion. (*See* Docs. 270 at 4 and 271 at 6.) The Court will thus accept that Defendant has exhausted his administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A).

Although there is no dispute as to Defendant's exhaustion efforts, the parties dispute whether Defendant's early release is warranted under 18 U.S.C. § 3582(c)(1)(A)(i). While Defendant argues that his vulnerability to COVID-19 due to his age, medical conditions, and incarceration constitute extraordinary and compelling reasons warranting his early release (Doc. 270 at 5, 15–16), the Government argues that Defendant's present circumstances and the speculative possibility of contracting COVID-19 are "far closer to ordinary than 'extraordinary.'" (Doc. 271 at 8–10). Specifically, Defendant points to, among other health issues, his heart condition and being overweight, citing that both are CDC-identified conditions that make him more likely to get severely ill from a COVID-19 infection. (Doc. 270 at 15–16; Doc. 272 at 2.) Further, Defendant argues that, as an incarcerated person, "it is impossible . . . to follow the CDC's recommendations to protect himself from exposure to [the virus]." (Doc. 270 at 16; *see also* Doc. 272 at 3.) In opposition, the Government argues that Defendant neither suffers from a terminal illness nor demonstrates that he suffers from a serious medical condition that substantially diminishes his ability to provide self-care within a correctional facility and from which he is not expected to recover. (Doc. 271 at 7, 9.) Moreover, the Government points to Defendant's lack of evidence that he would be less likely to contract COVID-19 if released and the efforts of the Federal Bureau of Prisons ("BOP") to protect the health of inmates and curtail the spread of the virus in its facilities, including its efforts in transferring vulnerable inmates to home confinement under its now broader statutory authority and in vaccinating its staff and inmates. (*Id*. at 3–5, 10.)

Having considered Defendant's age, medical conditions, the risk of a COVID-19 infection while in BOP's custody, and the guidance set forth in U.S.S.G. § 1B1.13, the

Court cannot conclude that the arguments presented by Defendant rise to the level of extraordinary and compelling circumstances meriting his early release. While the Court recognizes that some of Defendant's health issues may increase his risk of suffering severe illness if he were to contract COVID-19,[2] Defendant's speculation that he may contract COVID-19 is insufficient to warrant compassionate release. *See United States v. Pena*, 2020 WL 7123025, at *3 (D. Ariz. Dec. 4, 2020) (recognizing "that the infection of any inmate is concerning," but noting that "a general concern over contracting [COVID-19] is insufficient legal cause for compassionate release"). Defendant discusses the risks that COVID-19 poses to vulnerable inmates under general conditions of confinement within detention facilities nationally (Doc. 270 at 10–14) and presents statistics regarding different prisons (Doc. 267 at 8–9), but he provides limited information about his conditions of confinement at the Giles W. Dalby Correctional Facility. Defendant alleges that other inmates "breath[e] around him," that asymptomatic inmates go unnoticed due to a lack of "compound[-]wide testing," and that common surfaces and other areas are cleaned only once a day, without disinfectants. (*Id*. at 7–8.) These allegations and Defendant's discussion about general conditions of confinement inform the Court about nothing more than general threats to incarcerated persons and speculation as to whether COVID-19 will spread at Defendant's facility, whether he will contract it, and whether he will suffer a severe case. *See United States v. Bolze*, 2020 WL 6151561, at *11 (E.D. Tenn. Oct. 20, 2020), *aff'd*, 2021 WL 1978362 (6th Cir. Apr. 6, 2021) (finding that "speculation as to whether COVID-19 will spread through Defendant's detention facility, whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release," even after considering Defendant's argument "that some courts have granted compassionate release to inmates in facilities where there are no confirmed cases of COVID-19, perhaps in some circumstances due to a lack of adequate testing") (internal quotations and alterations omitted). Further, Defendant's most recent medical records reflect that he has

---

[2] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

- 5 -

received medical care, medication, and medical education from medical personnel at his facility (Doc. 267-1 at 11–16), providing no indication that Defendant will not receive adequate medical care while in custody. The Court finds that Defendant has not met his burden of showing extraordinary and compelling reasons warranting his early release.

Even if Defendant had met his burden, the Court nonetheless finds that his early release is unwarranted because the factors set forth in 18 U.S.C. § 3553(a) and the danger Defendant poses to the public weigh against his release. The nature and circumstances of Defendant's offenses were serious—via a conspiracy involving approximately 25 other individuals, Defendant led a scheme to defraud various financial institutions and to obtain money or other property from them by purchasing the stolen identities of numerous people, including their credit card account information, to manufacture counterfeit credit cards and use them to purchase items of value, all of which resulted in the loss of hundreds of thousands of dollars. (Doc. 112 at 9–13.) Moreover, Defendant did not just play a role in these offenses—he directed the activities of his co-conspirators in all respects of the scheme. (*Id*. at 10.) Particularly troubling is the fact that Defendant, shortly after his arrest and while in custody, instructed his wife to delete account information from his phone and laptop to destroy and conceal evidence of his offenses, and he then followed up to confirm that the information had been deleted. (*Id*. at 13.)

Although Defendant admits that the nature and circumstances of his offenses qualified him for the sentence this Court imposed in 2017, he argues that "the sentencing purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness." (Doc. 270 at 19–20.) Further, Defendant argues that the time he has already served is sufficient to satisfy the purposes of sentencing. (*Id*. at 19.) As noted above, Defendant's custodial setting during this pandemic does not sufficiently justify his early release, *see* discussion *supra* p. 5–6, especially as progress within the federal prison system and in the community is being made with respect to COVID-19. Additionally, in imposing his sentence, the Court already departed—by 27 months—from the custodial sentence recommended by both U.S. Probation and the Government. (Doc. 208 at 17;

Doc. 207 at 13.) For these reasons, the Court finds that the remaining term of Defendant's custodial sentence will continue to provide him with needed correctional treatment, remains suitably tailored to provide just punishment for his offenses, promotes respect for the law, and will deter him from future criminal conduct.

Finally, although the dangerousness finding does not bind this Court's decision, *see Aruda*, 993 at 799, 802, the Court agrees with the Government's assessment under 18 U.S.C. § 3142(g) and cannot conclude that Defendant's statements of remorse, efforts to educate and rehabilitate himself while incarcerated, plans to live in Mexico with his wife and help his mother, job offer, or any other grounds that he submits, mitigate his continuing danger to the public if released. (Doc. 267 at 9–11; Doc. 270 at 20–21; Doc. 272 at 2–3.) The most significant factor leading the Court to conclude that Defendant remains a danger to the public is the nature and circumstances of his offenses. *See* discussion *supra* p. 6. As previously mentioned, Defendant's role in the conspiracy was not minor—he dealt with foreign suppliers, over the Internet, to obtain the stolen credit card data; directed the making of the counterfeit credit cards, including the details imprinted on them; and directed what merchandise should be purchased with the counterfeit credit cards, all to unlawfully enrich himself and his co-conspirators. (Doc.112 at 10–11; Doc. 213 at 5.) The Court notes that Defendant and his co-conspirators committed the instant offenses while residing in Hermosillo, Sonora, Mexico (Doc. 112 at 9), a city that Defendant described as being "rampant" in the fraudulent credit card business (Doc. 213 at 8) and where he plans to live and work if released (Doc. 267-1 at 22; Doc. 270 at 20–21; Doc. 270-5 at 2). The Court further notes that, during the time of the conspiracy, Defendant was employed (Doc. 213 at 12), and yet he nonetheless led this financial scheme. For these reasons, the Court is unconvinced that Defendant poses no financial danger to the public, especially now given the economic impacts caused by the pandemic. *Unites States v. Fuller*, 461 F. Supp. 3d 1046, 1054 (W.D. Wash. 2020) (noting, in a case where the defendant was also convicted of bank fraud and aggravated identity theft, that "[d]ue to the economic impacts of the COVID-19

pandemic, large segments of the public have recently suffered severe financial setbacks, unemployment, and other deprivations that may render them particularly vulnerable to those types of fraudulent schemes").

Accordingly,

**IT IS ORDERED** that Defendant's Amended Motion for Relief Under 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 270) is **denied**.

Dated this 30th day of July, 2021.

_____
Honorable Rosemary Márquez
United States District Judge